IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                              :        CASE NO. 08-05353(ESL)

                                    :
RELIABLE MEDICAL EQUIPMENT          :
                                    :        CHAPTER 11
      Debtor                        :
                                    :

ORDER

      This case is before the court upon Reliable Medical Equipment's (the "Debtor") request for approval of the disclosure statement dated May 11, 2009 and filed on May 12, 2009 (Docket No. 172). Also pending resolution is Firstbank's motion to dismiss under 11 U.S.C. §1112(b)(2), (3) and (4), filed on June 24, 2009 (Docket No. 204) for failure to obtain approval of the disclosure statement and confirmation of a plan within a reasonable period. A hearing to consider and rule upon the adequacy of the disclosure statement and the information contained therein was held on June 16, 2009 (Docket No. 198). The court denied approval of the disclosure statement for failing to provide adequate information regarding the Debtor's accounts receivables, and the means for executing and funding the plan of reorganization. Debtor was granted twenty days to file an amended disclosure statement or show cause why the case should not be dismissed for unreasonable delay prejudicial to creditors and the absence of a reasonable likelihood of rehabilitation. The Debtor has not filed an amended disclosure statement as ordered, instead, on July 6, 2009 the Debtor filed a motion in compliance with order submitting amended Exhibit #6 to the disclosure statement and a billing and collection analysis (Docket No. 207). On September 18, 2009 the Debtor filed a reply to objections to the motion in compliance with order which included additional information to supplement the disclosure statement. For the reasons set forth below, approval of the disclosure statement is denied,

and Firstbank's motion to dismiss is granted.

This case was filed on August 19, 2008 under Chapter 11 of the Bankruptcy Code. According to the Schedules the Debtor's only assets are accounts receivables in the amount of $1,316,062.19, property and equipment in the amount of $51,560.27 and inventory in the amount of $72,203.38. The Amended Statement of Financial Affairs filed on September 25, 2008 provide that the Debtor's income in 2006 was $583,313.00, in 2007 $4,536,107.00 and from Jan-Aug 2008, $1,548,536.00. The monthly operating report corresponding to the month of August 2008 was filed on October 1, 2008 (Docket No. 48). The same reflects a beginning cash balance of $(9,804.40) and an ending cash balance of $(15,967.23), total accounts receivables in the amount of $1,316,062.19 and post petition accounts payable $0.00. The last operating report on record was filed on November 18, 2009 and corresponds to the month of August 2009 (Docket No. 261). This operating report reflects a beginning cash balance of $12,187.53, an ending cash balance of $12,009.40, total amount of accounts receivables of $1,656,602.52 and post petition payables in the amount of $3,577.90. Currently outstanding are the monthly operating reports corresponding to September, October and November 2009.

At the Chapter 11 status conference held on November 14, 2008 the Debtor stated that they rent and repair medical equipment to contractors and subcontractors. The Debtor further stated that their cash flow problems, Farmacia La Salud's attempt to execute a judgment in their favor and MCS' attempt to cancel their contract, prompted the bankruptcy filing. The Debtor stated that the disclosure statement and plan would be filed within 90 days, that is, by February 2009.

On February 27, 2009 Firstbank filed a motion to dismiss the case for failure to file the disclosure statement and plan of reorganization having elapsed 160 days since the filing of the

petition (Docket No. 133). On March 17, 2009 the Debtor requested a 45-day extension to file the disclosure statement and plan (Docket No. 141). The request was granted on March 19, 2009 (Docket No. 146). Firstbank's motion to dismiss was held in abeyance pending Debtor's compliance with the extension granted by the court (Docket No. 156). Again, on May 4, 2009 the Debtor requested a short extension of time of 7 days to file the disclosure statement and plan. The disclosure statement and plan were filed on May 12, 2009 (Docket Nos. 172, 173). Attached to the disclosure statement is the Index to Exhibits listing six exhibits, presumably included thereafter. However only two of those listed were actually attached, number 1, the Debtor's income tax returns for 2006 and 2007, and number 5, a liquidation analysis. Missing are number 2, the profit and loss statement for 2008, number 3, the summary of the monthly operating reports, number 4, schedule of payments under the plan, and number 6, the operating projected income statement.

In section 5.2, page 22, of the disclosure statement the Debtor informs as the means to execute the plan that the monies to fund the plan will be derived from the Debtor's business operations for services provided under assumed contracts and new contracts. A set of projections was said to be included as Exhibit 6. To fund the plan the Debtor was also counting on the use of $186,290.62, which are deposited with the clerk of this court and were subject to a dispute with Farmacia La Salud. On June 3, 2009 this court determined that such monies were subject to a perfected pre-judgment attachment lien in favor of Farmacia La Salud and declined to order the disbursement of the funds to either the Debtor or Farmacia La Salud.

At the hearing on the approval of the disclosure statement held on June 16, 2009 the court denied the Debtor's request to assume the executory contract with MCS as the contract had been terminated prior to the filing of the petition. Regarding the disclosure statement the court expressed

3

two concerns, first, that roughly ninety percent of the Debtor's assets were in the form of accounts receivables and that the disclosure statement does not contain adequate information with respect to the same, that is, a detail, an aging and an assessment of the accounts receivables was not provided, and second, that no adequate information regarding the means of implementing the plan to show feasibility of the same was provided. The court pointed out that it had been clear throughout the history of the case that the contract with MCS had been the most important source of income for the Debtor and that the disclosure statement does not adequately address how the Debtor will reorganize and fund the plan in the event the assumption of the MCS contract was denied. The court also pointed out that based on the decision entered on June 3, 2009 the Debtor was not allowed to withdraw the monies, subject to a pre-judgment attachment in favor of Farmacia La Salud, deposited with the clerk of this court, which also presented a disclosure and feasibility problem to the Debtor, as the Debtor's disclosure statement provides for the payment of priority creditors with such funds. The court denied the approval of the disclosure statement and granted the Debtor 20 days to file an amended disclosure statement. The court warned that the disclosure statement must be a self-contained document.

The amended disclosure statement was never filed, two supplements were. The motion in compliance with order submitted amended Exhibit #6 to the disclosure statement and a billing and collection analysis from August 2008 to June 2009. Amended Exhibit #6 is a five-year projected income statement. The author of such projections is undisclosed and the projections specify that they are for management purposes only. The projections are purportedly based on the budget for the five months ending in May 2009 but such numbers are not disclosed therein. According to the projections the Debtor's most important sources of income for the next five years will be Humana, MCS,

American Health, First Medical, Prosthetis Division and Non-Participant Provider. The billing and collection analysis reflects that 60% of Debtor's total billing from August 2008 to June 2009 corresponds to MCS. Neither First Medical nor Prosthetis Division appear as customers in the billing and collections report, and as to non-participant providers, a category of other income reflects billing for that year of under 2% of Debtor's total billing. The projections have First Medical producing 9% of total cash inflows, the Prosthetics Division 16%, the non participant providers 6%, and MCS 25%, for the first year. The projections do not provide any explanation substantiating the projected income from First Medical, and as to the Prosthetics Division the projections explain that they will start providing such services by October 1, 2009. No operating report for September, October or November has been filed thus there is no way of confirming that the Prosthetics Division is producing the expected income. It is clear that the projections filed with the motion in compliance with order are not substantiated with the billing and collection analysis filed with the same motion and do not adequately take into account that the Debtor will not assume MCS' contract. The Debtor failed to present the information requested regarding the accounts receivables.

Several creditors objected to the motion in compliance with order and the Debtor replied on September 18, 2009 (Docket No. 245). Regarding the accounts receivables the Debtor explains that MCS has refused to pay valid bills which has forced the Debtor to file a complaint against MCS in the amount of $3.7 million, which is why the value assigned to the accounts receivables for liquidation purposes is 20%, but in reality it should be 0%. Again the Debtor failed to submit the required detail, aging and assessment of the accounts receivables. As to the means to fund the plan the Debtor included as an attachment a summary of the electronic billing reports confirmations transmitted by Inmediata, the Debtor's clearinghouse, post-petition, from August 2008 to August

2009 followed by the actual reports. Such summary shows that the Debtor generated new income in the amount of $1,325,601.95, 60% of which or $801,588.89 was billed to MCS. The Debtor argues that the denial of the assumption of MCS' contract does not affect the funding of the plan because clause 13.9 of the contract provides that "[i]n the event of termination of this Agreement at the end of a term or otherwise, Supplier shall continue providing durable medical equipment to any Insured then receiving services from such supplier until MCS can make arrangements with another Supplier for the provision of durable medical equipment." The Debtor also included with the motion a letter from MCS, informing the Debtor of the cancellation of the contract, and another letter from MCS reminding the Debtor that it is its duty under the contract to continue offering the necessary services to their insured until the transition is completed, while citing the referred clause 13.9 of the contract. The cancellation letter is dated July 3, 2008 and the second letter is dated September 5, 2008.

Upon the Debtor's bankruptcy filing in August 2008 a dispute regarding whether the contract with MCS was cancelled pre-petition or not arose. Such dispute was disposed of by this court at the hearing on the approval of the disclosure statement, in June 2009, thus, until then the cancellation was not in effect. Clause 13.9 imposes a duty on the Debtor to continue providing services until a new supplier is in place in order to avoid disruption for the insured. However, once a new supplier is in place there is no reason for MCS to continue using the Debtor as their supplier. The projections make the assumption that MCS will continue doing business with the Debtor for the next five years which in the face of the cancellation of the contract seems overly optimistic, if not plainly unrealistic.

The Debtor has also failed to disclose how the plan will be feasible in view that the funds deposited with the Clerk of the court will not be available to pay the priority claims. According to the plan of reorganization, on the effective date of the plan (30 days after the order of confirmation)

6

the Debtor will pay $100,000.00 to be distributed pro rata among all unsecured priority claimants, and at least $34,875.00 to administrative claimants. The disclosure statement provides that the monies deposited with the clerk of this court will be used to that effect but in light of the fact that this will not be the case, the supplements to the disclosure statement do not inform how those claims will be paid. In fact, the last operating report filed which corresponds to August 2009, one year into the bankruptcy case, reflects an ending cash balance of approximately $12,000.00, certainly not sufficient for the proposed payment. Also, the Debtor has stated that the account receivables from MCS, which according to the Debtor account for most of the Debtor's total account receivables, are virtually uncollectible. The only source of income left is income derived from clients other than MCS, but the evidence submitted, and the financial history of the case as seen through the operating reports suggests that this income will not suffice to fully fund the proposed plan, and more immediately the payments due on the effective date.

It should also be noted that the Debtor failed to comply with this court's order issued at the hearing on the approval of the disclosure statement, directing the filing of an amended disclosure statement, and the Puerto Rico Local Bankruptcy Rule 3016-2 which provides as follows:

> Any amendments to a Chapter 11 plan and/or disclosure statement must be incorporated into the original of those documents. The revised document must be filed with the court in its entirety identified as the "First, Second, (etc.) Amended Disclosure Statement and/or Plan." All amendments must be highlighted by underlining, bold type, or other conspicuous means, to identify the amendment to the originally filed document. The proponent must serve the document(s) on the United States Trustee and on any other party who requests a copy.

In view of the foregoing the disclosure statement as supplemented lacks adequate information, sufficient in detail that would enable a hypothetical investor typical of the holders of claims in the case to make an informed judgment about the plan. See, 11 U.S.C. § 1125. Therefore, the disclosure

statement dated May 11, 2009 may not be approved.

This court also finds that cause exists warranting the dismissal of the case under 11 U.S.C. § 1112(b)(4)(A), (E), (F) and (J) due to the absence of a reasonable likelihood of rehabilitation, the failure to comply with an order of the court, the unexcused failure to file the monthly operating reports for September, October and November, 2009, and the failure to file a complete disclosure statement within the time granted by this court. The Debtor has not been able to obtain approval of a disclosure statement within 17 months from filing. Therefore, the motion to dismiss filed by Firstbank on June 24, 2009 (Docket No. 204) for failure to obtain approval of the disclosure statement and confirmation of a plan within a reasonable period, taken under advisement on September 8, 2009 (Docket No. 239), is hereby granted.

In conclusion, approval of the disclosure statement (Docket No. 172) as supplemented is hereby denied; and Firstbank's motion to dismiss (Docket No. 204) is hereby granted. The bankruptcy petition is hereby dismissed.

SO ORDERED.

In San Juan, Puerto Rico, this 4th day of January 2010.

_____
ENRIQUE S. LAMOUTTE
U. S. Bankruptcy Judge